HENRY ROSER, NEXT FRIEND OF NEGRO WOMAN ANTOINETTE,
AND HER TWO CHILDREN, AND NEGRO MAN JACK, VS.
PAUL MARLOW AND BEAL EDWARDS, EX'ORS
OF JOHN DUGGER, JR., DEC'D.

### Petition for Certiorari.   Bill for Injunction.

A *Certiorari* may issue to bring up a decision of the Court of Ordinary, notwithstanding, that by the law of Georgia, an *appeal* is given from the same tribunal to the Superior Court.

The petitioner for *Certiorari* must either be a party to the record, *or* one who has a direct and immediate interest in it, or is privy thereto.

The writ of *Certiorari* issues as well at *common law*, as by statute.   It is a Constitutional writ. The Judiciary Act of 1799, so far as it relates to *Certiorari* is an *affirmative* statute without a negative, express or implied.   The mode prescribed by it is *accumulative;* at all events, so far as relates to the proceedings of other Courts than the "INFERIOR Court."

It is not necessary, that exceptions should be taken in the Court below, in order to bring up a decision of a *Court* of *Ordinary*.

Construction of the laws of Georgia concerning manumission.

A will which directs the executor to apply to the Legislature for the manumission of certain slaves, and if that cannot be accomplished, in that manner, that they should be sent out of the State, to where it can be done, is not illegal and does not controvene the policy of our statutes.

### By ROBERT M. CHARLTON, Judge.

THE application for *certiorari* in this case, sets forth, that *John Dugger, jr.* deceased, a short time before his death, made his last will and testament, containing, (amongst others) a clause in the words following.   "It is my will and desire, should it please God to remove me at this time, that my negro woman Antoinette, and her two children, together with my negro man Jack, should be emancipated and set free, if that can be done in any manner, either by the Legislature or otherwise, and if it cannot be accomplished, then I direct my executors, herein after named, to send them where it can be done out of the state:" that said will was presented for probate at the March term of the Court of Ordinary of Effingham county, by the defendants, the executors

of said *John Dugger*, but that said court, under a "mistaken apprehension of the legal effect and meaning of a certain statute of this state, prohibiting under certain penalties, the probate of instruments, having for their object the emancipation of slaves, and being also mistaken as to the operation of said statute upon the aforesaid clause in said will, determined that such clause was contrary to the laws of this state, and absolutely void, and passed an order prohibiting the Clerk of said court from record. ing the same." A *certiorari* is therefore prayed for.

I cannot accede to the truth of the proposition, (advanced by the counsel for the executors, who resist this application,) which denies that a *certiorari* can issue, to bring up a decision of the Court of Ordinary. It is true, that under the Constitution of our state, an *appeal* is allowed from the decision of that court to the Superior Court, and the Act of 1805, (*Prince's* Dig. 166,) provides, for the manner in which that appeal shall be entered: but the Constitution also declares, that the "Superior Courts shall have power to correct errors in inferior judicatories by writ of *certiorari.*" There is nothing in the Constitution or laws of our state, which prohibits a *certiorari* from being issued, because an appeal is given from the same tribunal to which it issues. The Judiciary Act of 1799 provides, both for an appeal and a writ of *certiorari*, from the Inferior Court. The nature of the two remedies is well understood, and one of the distinctions which has been drawn between them, is, that an *appeal* can only be had when it is *expressly given*, and a *certiorari* always lies, unless it has been *expressly taken away*. (2 *Chitty's* Gen. Prac. 374, 5.) "Where any court is erected by statute, a *certiorari* lies to it." (1 *Lord Raym'd.* 469. *Groenvelt* vs. *Burwell,* S. C. 1 *Salk,* 144.)

This point has been determined by one of my predecessors in the case of *McCaskill* vs. *McCaskill,* (*T. U. P. Charlton's* Rep. 151,) and the language used, is, "the party has now his election either to apply for a *certiorari* upon the basis of error, or to ap-

peal. The judgment of this court upon the first must be error or no error, upon the latter, an affirmance or reversal of the inferior judicatory."

Nor do I consider the objection, that the applicant was not a *party* in the court below, an insuperable bar to his present application. I think, that the proper rule is, that the petitioner for *certiorari* must either be a party to the record, *or* one who has a direct and immediate interest in it, or is privy thereto. The rights and interests of heirs, devisees, executors and administrators are recognized, as well as those of the original parties. (See *Bath Bridge* and *Turnpike Company* vs. *Magoun, et. als.* 8 *Greenleaf* 292 citing *Porter* vs. *Rumery.* 10 *Massachusetts* Rep. 64. *Shirley* vs. *Lunenburgh,* 11 *Massachusetts* Rep. 379. *Grant* vs. *Chamberlain,* 4 *Massachusetts,* 611. *Haines* vs. *Corlis, ib.* 659. *Glover* vs. *Heath,* 3 *Massachusetts* Rep. 252. *Ruffin, J.* (in delivering the opinion of the Superior Court of North Carolina, in the case of *Perry* vs. *Perry,* 1, N. C. Term Rep. 184,) says, "I think it may be laid down as a safe rule, that any person affected in interest by *exparte* proceedings in an inferior court, shall have, upon a proper case, a *certiorari.* Their rights shall not be concluded by an *exparte* transaction." · When I remember, that the real parties in interest in this application, were unable to guard themselves from this decision of the Court of Ordinary, and that those who should have protected their rights, are now warring against them, and that upon the determination of this question depends their right to freedom, I think that I ought not to limit the application of the above rule. I am of opinion, therefore, that they have a sufficient interest in the proceedings, to allow them, by their *prochein ami,* to maintain this writ.

Nor do I *now* think that the objection, that no exceptions were taken in the Court below, is fatal to the present application. A *Certiorari* is an original writ. (*Fitzherbert's Natura Brevium,* 554, A.) It issues at *common law,* as well as by *statute.* "Where

any Court is erected by statute, a *certiorari* lies to it." Commissioners of Sewers refused to obey a *certiorari*, but they were all committed, "and yet the statute does not give authority to this Court, to grant a *certiorari*, but it is by the *common law* that this Court will examine if other Courts exceed their jurisdiction." (Per *Holt*, C. J. in *Groenvelt* vs. *Burwell*, 1 Lord Ray'd. 469. S. C. 1 Salk. 144, and see *Rex* vs. *Inhabitants of Glamorganshire*, 1 Lord Ray'd. 580. (A common law *certiorari* is mentioned in 12 *Wendell*, 262.) It is also a constitutional writ. (See Const. of Georgia, art. III, sec. 1.) The writ of *certiorari* being therefore, a constitutional and common law writ, and one which always lies, unless expressly taken away, (2 *Chitty's* Gen. Prac. 374, 5,) the question arises, how is it affected by the Judiciary Act of 1799. (*Prince's* Dig. 218.) That Act seems to me, (so far as it relates to this proceeding,) to be an *affirmative* statute; it has no negative, express or implied, and the rule is, that a statute made in the affirmative, without any negative, express or implied, does not take away the *common law*. (2 Inst. 200. 1 Inst. 111. *Harg.* and *But.*: Co. Litt. 115, in notis. *Dwarris* on Statutes, 637: IX. Law Library edit. p. 8.) The party may waive his benefit, by such affirmative statute, and take his remedy by the common law. (Bro. Parl. Pl. 70. 1 Rep. 64. Cro. Eliz. 104. *Dwarris* on Statutes, 638: IX. Law Library edit. p. 9.) And see the rule further exemplified, in reference to this very subject of *certiorari*, in *Bacon's* Ab: title *Certiorari*, (D.)

Is it necessary that exceptions should be taken at *common law?* The decision in *ex parte Simpson*, (decided by Judge *Thomas U. P. Charlton*, at Chambers, of Chatham Superior Court, July, 1821,*) declares, that a *certiorari* may issue without such exceptions having been taken, unless in cases of *certiorari* to the "*Inferior* Court*," which, the Judge who decided that case, thought

---

* *Supra*, p. 111.—(*Ed.*)

was *alone* referred to by the statute. On application for *certiorari*, to *any other Court*, than the "*Inferior* Court," the Judge says, "a petition stating *in extenso*, the errors of the inferior judicatory, and verified by the applicant," will be sufficient to obtain the writ. The case of *Low, Taylor & Co.* vs. *Samuel Goldsmith*, (determined by Judge *Law*, at Chambers of Chatham Superior Court, in 1829,*) was an application for certiorari, to the "*Inferior* Court," and the exceptions, which were signed by the Justices of said Court, after it had adjourned, and which were presented to the Judge of the Superior Court, in support of this application, were contradicted by a statement, signed by the same Justices, and presented by the opposite party. That decision must be read, in reference to the case presented, and seems to have been dismissed, as much from the contrary statements of the Justices, as from the want of exceptions taken at the proper time. The party had attempted to bring up the matter, by the *statutory* proceeding, without complying with its provisions. There was a denial, too, by the individuals composing the Court, of the facts presented by the applicant, and the Judge, in his discretion, "upon the great irregularity of the proceedings," refused the rule. The question, whether the applicant could not have procured the *constitutional* certiorari, (as contradistinguished from the judicial,) was not presented, and *at all* events, this was an application for certiorari, to the "Inferior Court." The present application steers clear of all the difficulties suggested in that decision. There are no conflicting statements of facts. The object is, to bring up a written document, which will speak for itself, in order that it may receive a judicial construction, and it is to be directed to a Court, not proceeding according to the course of the common law. The New-York decisions, referred to by Judge *Law*, are founded upon the statute of that State, which is a copy of the statute of *Westm.* 2. Without desiring to overturn the decisions of any of my predecessors, (for all of whom I

---

* *Supra*, p. 288.—(*Ed.*)

feel respect, and for one of them, veneration and affection,) I may place *this* decision upon the distinction taken in *ex parte Simpson*, between the constitutional and judicial writ of certiorari—the latter of which is there declared to be alone applicable to the "Inferior Court;" and as the application in this case, seeks to bring up the decision of the *Court* of *Ordinary*—a tribunal not proceeding according to the course of the common law, and not being identified with the "*Inferior Court*," and having a Clerk appointed in a different manner, (although the Court itself consists of the same individuals, who preside over the common law tribunal, denominated *par excellence*, the "*Inferior* Court,") I may, without disrespect, declare, that on such an application, to remove the decisions of such a tribunal, the provisions of the judiciary Act of 1799 either have no applicability, or are accumulative to the remedy and mode existing anterior to its enactment.

Having got clear of the forms, let us look to the merits. I do not acquiesce in the decision of the Hon. the Court of Ordinary, in causing the whole of the clause relating to these slaves, to be expunged from the will. It is a cardinal rule, in the construction of wills, that the interpretation should be favorable, and as near the mind and intent of the party, as the rules of law will admit. So it is, that if the words will bear two senses, one agreeable to, and another against law, *that* sense shall be prefered, which is m st agreeable thereto. Taking these rules for our guides, we might make this will perfectly legal and operative, in regard to these slaves, by expunging the words "either," and "or otherwise," (and it is only the illegal part, that ought not to be recorded,) and then it will read thus : "It is my will and desire, should it please God to remove me at this time, that my negro woman Antoinette, and her two children, together with my negro man Jack, should be emancipated, and set free, if that can be done in any manner by the Legislature, and if it cannot be accomplished, then I direct my executors hereinafter named, to send them where it can be done, out

of the State." Is there any thing illegal in this? Would such a will come in conflict with the policy of our statutes on the subject? *John Dugger* might, in his lifetime have applied to the Legislature, to manumit these slaves, without incurring any penalty, and may he not ask his legal representative, to make the same application after his death? And at all events, if *the rights of creditors* do not intervene, (and the executors have not shewn such rights to exist,) an individual has, assuredly, the power, to send his slaves out of the State, for any purpose, although he might not be permitted to bring them back. Can he not ask, by his last will and testament, that this should be done by those to whom he has entrusted his property, and who are sworn to obey his injunctions?

The intent of the statutes is expressed in the preamble to the Act of December 19th, 1818, (*Prince's* Dig. 465.) The object of the statutes relating to manumission, was, to prevent a horde of free persons of color, from ravaging the morals, and corrupting the feelings of our slaves. Experience had taught our Legislators, that such a class, lazy, mischievous and corrupt, without any master to urge them to exertion, and scarcely any motive to make it, was an extremely dangerous example to our naturally indolent slaves. They therefore declared, that such a class should not be increased by manumission, (save by consent of the Legislature,) or by the admission of such persons from other States to reside therein.* The Legislature is then the proper tribunal, (if I may use that term,) to determine whether the case presented is one in which none of these dangers exist, one, for which reason and humanity plead. To them, the executors in the discharge of one of the most solemn of all duties, the performance of the dying injunctions of their friend, should make the application, and if it should be refused, then they should fulfil the alternative command of their testator, by sending these slaves out of the State.

---

* Since the decision in this case, the Editor has met with the case of *Jordan* vs. the heirs of *Bradley*, (*Dudley's* Rep. 170,) which confirms his own opinion, on this point.—(*Ed.*)

I am of course to be understood, that the rights of creditors must be protected, and that these are superior to the claims of the applicants, but the executors have not answered the bill that has been filed, have not set forth any debts due by testator, which, without the sacrifice of these slaves, they are unable to discharge, and I am not therefore to presume, that any such demands exist.

This decision has been written under the combined pressure of business and affliction, and in contemplation of the speedy resignation of the office which I now hold. I would regret any errors contained in it, did I not know, that upon the return to this certiorari, all the points contained herein may be revised by my successor, who may thus remove the evil which my hasty act may have occasioned. At all events, I have erred on the safe side. I can do no harm by granting this writ, save occasioning a few months' delay, whilst the refusal to allow it, would cause irreparable injury.

I cannot close this decision without declaring, that I have not meant to impute any dishonorable views to the executors, in the course they have adopted. It would be unpardonable in me, if I should cast a stigma upon the reputation or character of any one, until I was perfectly satisfied that it was deserved. The strong letter of the law concerning manumission, and the heavy penalty attached to the attempt to execute an illegal will, may well have alarmed those, who are unacquainted with the legal rules of construing statutes. I will not permit myself to doubt, that the executors are anxious to perform the dying request of their testator, if it can be done, without risk to themselves, and without violating any law of the land. Least of all, would I be understood, to cast any reflection upon the intelligence of the Court of Ordinary. That Court, as it is well known, is composed of gentlemen, selected for their talent and integrity, by the citizens of the county. Though clothed with immense power, both as a Court of Ordinary, and in their common law tribunal, the "Inferior Court," and

though often compelled to decide the most difficult and abstruse questions of law, yet, the individuals composing the Court, are not necessarily *lawyers*, and few of them have ever been bred to the bar.   Such is our peculiar Judiciary system.   An appeal is given to the Superior Court, by whom the errors of the inferior judicatory may be corrected, and it would astonish any one, who had not observed the workings of the system, to learn, how seldom that right of appeal is exercised, and how admirably justice is administered in the various counties, by the Justices of the Inferior Court, aided only by their own integrity and intelligence, and by those principles of justice and reason that are innate in the breasts of honest and discerning men.   To suppose, however, that they should never err, when called upon to decide technical questions, would be outraging common sense.   In this case, I think that they have adhered too much to the letter, without looking to the spirit and equity of the statute, but surely, it does not impeach their wisdom or their virtue, to declare, that they have erred in the interpretation of an Act, concerning which many lawyers entertain a doubt, and upon which a different construction to that which I now give, has heretofore, I understand, been made in the county of Effingham.

*It is ordered*, that the writ of *certiorari* do issue as prayed for, and that in the meantime, that all proceedings be stayed.

Nicholas Marlow, for applicant—L. S. D'Lyon, contra.